**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANATOLIE STATI
20 Dragonmirna Street
Chisinau, Republic of Moldova

and

GABRIEL STATI
1A Ghioceilor Street
Chisinau, Republic of Moldova

and

ASCOM GROUP, S.A.
75 A. Mateevici Street
Chisinau, MD-2009, Republic of Moldova

and

TERRA RAF TRANS TRAIDING LTD.
Don House, Suite 31
30-38 Main Street, Gibraltar

Petitioners,

v.

**Civil Action No.** 1:14-cv-00175

REPUBLIC OF KAZAKHSTAN
Ministry of Oil and Gas of the
Republic of Kazakhstan
22 Kabanbay Batyr Ave.
Block "A", Room 517
010000, Astana
Republic of Kazakhstan

Respondent.

**PETITION TO CONFIRM ARBITRAL AWARD**

Petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd., by and through their undersigned counsel, hereby petition this Court for an order

pursuant to 9 U.S.C. § 207 (i) confirming and recognizing the final arbitral award (the "Award") rendered on December 19, 2013 in an arbitration between Petitioners and Respondent the Republic of Kazakhstan (the "ROK") pursuant to the Rules of Arbitration of the Arbitration Institute of the Stockholm Chamber of Commerce ("SCC Rules"),[1] (ii) entering judgment in Petitioners' favor against the ROK in the amount of the Award with pre- and post-judgment interest and costs as provided therein and as authorized by law, plus the costs of this proceeding; and (iii) awarding Petitioners such other and further relief as this Court deems just and proper.

**Parties, Jurisdiction and Venue**

1. Petitioners bring this summary proceeding under the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (June 10, 1958), 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention") and Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201 *et seq.*, to confirm a duly-rendered arbitration award issued in their favor against the ROK.

2. Petitioner Anatolie Stati is a natural citizen of Moldova and Romania, and resides at 20 Dragonmirna Street, Chisinau, Republic of Moldova.

3. Petitioner Gabriel Stati is a natural citizen of Moldova and Romania, and is the son of Anatolie Stati. He resides at 1A Ghioceilor Street, Chisinau, Republic of Moldova.

4. Petitioner Ascom Group S.A. ("Ascom") is a joint stock company incorporated under the laws of Moldova, with headquarters in Moldova, and located at 75 A. Mateevici Street, Chisinau, MD-2009, Republic of Moldova. Anatolie Stati owns 100% of Ascom.

5. Petitioner Terra Raf Trans Traiding Ltd. ("Terra Raf") is a limited liability

[1] The Award is captioned as SCC Arbitration V (116/2010).

company incorporated under the laws of Gibraltar, and is located at Don House, Suite 31, 30-38 Main Street, Gibraltar. Anatolie Stati and Gabrial Stati each own 50% of Terra Raf.

6. Respondent is the Republic of Kazakhstan and is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), 1602-1611.

7. This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1605(a)(6), as this case falls under the exception for cases brought to confirm arbitration awards that "are or may be governed by a treaty or other international agreement in force in the United States calling for the recognition and enforcement of arbitral awards," and 9 U.S.C. § 203.

8. Personal jurisdiction over the ROK is expressly conferred by 28 U.S.C. § 1330(b), which provides that this Court may exercise personal jurisdiction over a foreign state in any action with respect to which the foreign state is not entitled to sovereign immunity under 28 U.S.C. §§ 1605-1607, and over which the Court has subject matter jurisdiction.

9. Venue is proper in this district pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4).

## The Arbitration Agreement

### A. The ROK's Consent to Arbitrate

10. The ROK consented to arbitrate its disputes with Claimants pursuant to the Energy Charter Treaty ("ECT").[2] The arbitration agreement between the Claimants and the ROK consists of two elements: (i) the ROK's consent contained in Article 26(3) of the ECT; and (ii) the Claimants' consent contained in their Request for Arbitration.

---

[2] A true and correct copy of the ECT is attached as Exhibit B to the Declaration of Charlene C. Sun, dated February 4, 2014 ("Sun Decl.").

11. The ROK signed the ECT on December 17, 1994 and ratified it on October 18, 1995. The ECT entered into force in the Republic of Kazakhstan on April 16, 1998. In accordance with Article 1(2) of the ECT, the ROK is a Contracting Party to the ECT.[3]

12. Article 26 of the ECT entitled "Settlement of Disputes between an Investor and a Contracting Party," provides as follows in sub-paragraph (3)(a):

> (3) (a) Subject only to subparagraphs (b) and (c), each Contracting Party hereby gives its unconditional consent to the submission of a dispute to international arbitration or conciliation in accordance with the provisions of this Article.

13. Accordingly, the ROK provided its written consent to the arbitration in ECT Article 26(3), as it is a Contracting Party to the ECT.

**B. The Claimants' Consent to Arbitrate**

14. Moldova signed the ECT on December 17, 1994 and ratified it on June 10, 1996. The ECT entered into force in Moldova on April 16, 1998. In accordance with Article 1(2) of the ECT, Moldova is a Contracting Party to the ECT.

15. As "natural person[s] having the citizenship" of Moldova, Petitioners Anatolie Stati and Gabriel Stati are "Investors" within the meaning of Article 1(7)(a)(i) of the ECT.[4]

16. As "a company or other organization organized in accordance with the law applicable in" Moldova, Petitioner Ascom is likewise an "Investor" within the meaning of

---

[3] Article 1(2) of the ECT provides that a "Contracting Party" means "a state or Regional Economic Integration Organization which has consented to be bound by this Treaty and for which the Treaty is in force."

[4] Article 1(7) of the ECT provides, in pertinent part, that an "Investor" means "with respect to a Contracting Party," "(i) a natural person having the citizenship or nationality of or who is permanently residing in that Contracting Party in accordance with its applicable law," or "(ii) a company or other organization organized in accordance with the law applicable in that Contracting Party."

Article 1(7)(a)(ii) of the ECT.

17. As determined by the Tribunal, Petitioner Terra Raf is also an "Investor" under the ECT, as it is a company organized in accordance with the law of Gibraltar, which is a part of the European Community, which is itself party to the ECT. Award, Sun Decl. Ex. A, ¶ 746.

18. As "Investors" under Article 1(7) of the ECT, Petitioners' investment-based claims against the ROK were properly submitted to arbitration in accordance with the ECT, and the Tribunal properly found that it had jurisdiction over Petitioners' claims.

19. Articles 26(2)(c) and 26(4)(c) of the ECT provide that an Investor may elect to submit a dispute for resolution through arbitration under the Arbitration Institute of the Stockholm Chamber of Commerce. The Investor is required to provide its consent in writing.[5]

20. The Claimants provided their written consent to the Arbitration in ¶ 94 of their Request for Arbitration dated July 26, 2010 in the following terms:

> Claimants hereby consent to arbitration under the ECT and elect to submit this dispute to the Arbitration Institute of the Stockholm Chamber of Commerce in accordance with Article 26(4)(c) of the ECT.[6]

**<u>The Arbitration</u>**

21. Petitioners commenced the arbitration at issue herein by serving a Request for Arbitration on the ROK on July 26, 2010. The Request for Arbitration invoked Article 26(4)(c) of the ECT. That Article permits the submission of disputes under the ECT to

---

[5] *See* ECT, Article 26(4)(c) ("In the event that an Investor chooses to submit the dispute for resolution under subparagraph (2)(c), the Investor shall further provide its consent in writing for the dispute to be submitted to … [arbitration pursuant to the SCC Rules].")

[6] *See* Request for Arbitration, Sun Decl. Ex. C, at ¶ 94 ("Claimants hereby consent to arbitration under the ECT and elect to submit this dispute to the Arbitration Institute of the Stockholm Chamber of Commerce in accordance with Article 26(4)(c) of the ECT.").

arbitration "under the Arbitration Institute of the Stockholm Chamber of Commerce."

22. The arbitration was seated in Stockholm, Sweden, and proceeded in accordance with the SCC Rules, as provided by the ECT. The selection of the arbitral tribunal was completed on September 28, 2010, and consisted of Professor Karl-Heinz Bockstiegel (Chairman), David R. Haigh, QC (appointed by Petitioners), and Professor Sergei Lebedev (appointed by the Arbitration Institute of the Stockholm Chamber of Commerce).

23. The ROK was competently represented by counsel in the arbitration, first by attorneys from Curtis, Mallet-Prevost, Colt & Mosle LLP, and then by attorneys from Norton Rose Fulbright LLP and Winston & Strawn. The ROK participated in all aspects of the arbitration: it submitted a statement of defense, a rejoinder on jurisdiction and liability, a rejoinder memorial on quantum, and two post-hearing briefs, and it presented numerous witnesses and experts who gave testimony and submitted witness statements.

24. The tribunal conducted the hearing on jurisdiction and liability at the ICC Hearing Centre in Paris, France from October 1-8, 2012, during which the tribunal heard testimony from both Petitioners' and Respondent's witnesses.

25. The tribunal conducted the hearing on quantum at the ICC Hearing Centre in Paris, France from January 28-31, 2013, during which the tribunal heard testimony from both Petitioners' and Respondent's witnesses.

26. The tribunal conducted a final hearing at the ICC Hearing Centre in Paris, France on May 2-3, 2013, during which the tribunal heard expert testimony from both parties' experts and closing arguments.

27. The tribunal issued the Award on December 19, 2013. The Award found that the ROK had violated its obligations under the ECT with respect to Petitioners' investments,

found the ROK liable to Petitioners in the amount of US$ 497,685,101.00, plus pre-award interest at the 6-month U.S. Treasury Bill rate from April 30, 2009 until the date of payment compounded semi-annually, and further awarded 50% of Petitioners' costs and fees in the arbitration in the amount of US$ 8,975,496.40. In total, the Award requires the ROK to pay to Petitioners approximately US$ 506,660,597.40 plus compound interest as set forth in the Award. The Petition seeks confirmation of the Award by this Court. A true and correct copy of the Award is attached as Exhibit A to the Sun Declaration.

**Summary of the Dispute**

28. Petitioners began investigating investment opportunities in Kazakhstan in 1999. Petitioners' investments in Kazakhstan's natural hydrocarbon resources sector began with their purchase of controlling shares of two Kazakh companies, Kazpolmunay LLP ("KPM") and Tolkynneftagaz LLP ("TNG").

29. On December 9, 1999, Petitioner Ascom purchased a 62% share in KPM, a closed joint stock company, which owned the subsoil use rights to the Borankol oil field pursuant to Contract 305 on Exploration and Extraction of Hydrocarbons at the "Borankol" deposit (Mangystau Oblast), executed between the Agency of the Republic of Kazakhstan on Investments and KPM, and dated 30 March 1999.

30. On May 17, 2000, Petitioners' acquired a 75% interest in TNG, a Kazakh company that owned the subsoil use rights to the Tolkyn gas field and the Tabyl exploration block ("Tabyl Block") pursuant to Contracts 210 and 302 on Exploration and Extraction of Hydrocarbons at the "Tolkyn" deposit and the Tabyl Block (Mangystau Oblast), executed between the Agency of the Republic of Kazakhstan on Investments and TNG, and dated 12 August and 31 July 1998, respectively.

31. Through a series of subsequent transactions, Ascom came to own 100% of KPM, and Terra Raf came to own 100% of TNG. As of July 2000, Petitioners, through their ownership of KPM and TNG, were the operators for both the Borankol and Tolkyn fields, as well as the Tabyl Block.

32. Beginning around 2001, KPM and TNG invested substantial sums of money developing the Borankola and Tolkyn fields, and exploring the Tabyl Block. They conducted seismic evaluations, drilled and recompleted numerous wells, and built significant infrastructure for processing, storing, and transporting hydrocarbons. In addition, TNG commenced construction of a state-of-the-art liquefied petroleum gas ("LPG") plant to extract valuable liquid hydrocarbons from natural gas. In total, Petitioners invested (or reinvested) more than $1 billion in developing these previously-idle oil and gas fields, which employed numerous local citizens, supplied revenue to the Kazakh treasury, and greatly contributed to the overall development of the region.

33. Beginning in October of 2008, just as those investments had begun to mature and generate significant returns, the ROK began a campaign of intimidation and harassment apparently intended to pressure Petitioners into selling their investments to the state-owned oil company KazMunaiGas at a substantially depreciated price. Among its numerous harassing actions, the ROK:

- Baselessly and publicly accused Petitioners of committing fraud and forgery in their acquisition of TNG, which impaired their credit rating and clouded their title to TNG;
- Levied more than $70 million in baseless back taxes against both companies;

- Arrested and prosecuted KMG's general manager for the purported crime of "illegal entrepreneurial activity," based on KMG's alleged failure to have the correct license to operate a gathering pipeline (which it had operated for years with no question), ultimately sentencing him to four years in jail and imposing a fine of US$ 145 million on KPM (even though it had not been a party to the prosecution); and

- Ultimately, seized all of the assets KPM and TNG outright, under the pretext of several baseless and minor breaches of the Subsoil Use contracts.

34. Based on these actions, the Request for Arbitration alleged several claims under the ECT, including a denial of fair and equitable treatment of Claimants' investments in Kazakhstan. The tribunal issued the Award on December 19, 2013.

35. On jurisdiction, the tribunal found that (i) it had jurisdiction over the Petitioners' claims because the parties had consented in the ECT to arbitration before the SCC, (ii) the Petitioners were investors who had made investments within the meaning of the ECT, and (iii) all other conditions to jurisdiction were met. Award, Sun Decl. Ex. A, ¶¶ 709, 747, 813, 830, and 841.

36. On liability, the tribunal found, among other things, that the ROK's actions, taken together, "constituted a string of measures of coordinated harassment by various institutions of Respondent" that "must be considered as a breach of the obligation to treat investors fairly and equitably, as required by Art. 10(1) ECT." Id. at ¶ 1095.

37. Article 40 of the SCC Rules expressly provides that "[a]n award shall be final and binding on the parties when rendered. By agreeing to arbitration under these Rules, the

parties undertake to carry out any award without delay."

38. Moreover, Article 26(8) of the ECT expressly provides that:

> The awards of arbitration, which may include an award of interest, shall be final and binding upon the parties to the dispute. An award of arbitration concerning a measure of a sub-national government or authority of the disputing Contracting Party shall provide that the Contracting Party may pay monetary damages in lieu of any other remedy granted. Each Contracting Party shall carry out without delay any such award and shall make provision for the effective enforcement in its Area of such awards.

39. Despite these requirements, and Petitioners' demand that the ROK satisfy the Award, the ROK has not made any payment to Petitioners under the Award.

**Cause of Action**

40. Petitioners repeat and reallege the allegations in paragraphs 1 through 39 as if set forth fully herein.

41. The arbitration agreement set forth herein at paragraphs 10 through 20 constitutes "an agreement in writing" within the meaning of Article II(2) of the New York Convention. *See* ECT, Article 26(5)(a)(ii) ("The consent given in paragraph (3) together with the written consent of the Investor given pursuant to paragraph (4) shall be considered to satisfy the requirement for ... an 'agreement in writing' for purposes of article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, done at New York, 10 June 1958 (hereinafter referred to as the 'New York Convention').").

42. The Award arose out of a legal relationship that is commercial within the meaning of 9 U.S.C. § 202.

43. The Award was made in Sweden, a nation that is a signatory to the New York Convention, and which is a State other than the State where recognition and enforcement is sought hereby.

44. The Republic of Kazakhstan, Moldova, and the United States also are each signatories to the New York Convention.

45. The Award is final and binding within the meaning of the New York Convention and Chapter 2 of the FAA.

46. Upon information and belief, the ROK and its instrumentalities and agents maintain assets in the United States, and those assets are and have been used for commercial purposes in the United States and may be executed upon in satisfaction of any judgment entered in Petitioners' favor herein.

47. None of the grounds for refusal or deferral of the Award set forth in the New York Convention applies.

48. The Award is required to be confirmed pursuant to the New York Convention and 9 U.S.C. § 207.

WHEREFORE, Petitioners pray:

(a) That the Court enter an order pursuant to 9 U.S.C. § 207 confirming the Award against the ROK; and

(b) That, on the basis of the confirmed Award, the Court enter judgment that the ROK is liable to Petitioners jointly in the amount of US$ 506,660,597.40 plus (a) compound pre-judgment interest as set forth in the Award from April 9, 2009 to the date that judgment is entered herein, and (b) post-judgment interest from the date that judgment is entered to the date of satisfaction; and

(d) That Petitioners be awarded such other and further relief as may be proper.

Dated: New York, New York
       February 4, 2014

                                          Respectfully submitted,

                                          */s/ James E. Berger* .
                                          James E. Berger (D.C. Bar 481408)
Charlene C. Sun (*pro hac vice* pending)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2200
Fax: (212) 556 -2222
jberger@kslaw.com
csun@kslaw.com

Reginald R. Smith (*pro hac vice* pending)
Kevin D. Mohr (*pro hac vice* pending)
KING & SPALDING LLP
1100 Louisiana Street, Suite 4000
Houston, TX  77002
Tel: (713) 751-3226
Fax: (713) 751-3290
rsmith@kslaw.com
kmohr@kslaw.com

*Attorneys for Petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., Terra Raf Trans Traiding Ltd.*